UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NJ PEDIATRIC NEUROSCIENCE INSTITUTE,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　-against-<br><br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>　　　　　　　　　　Defendant. | Index No.:<br><br>**COMPLAINT** |

Plaintiff, NJ Pediatric Neuroscience Institute ("Plaintiff"), on assignments from Peter A., Ava A., Adele B., and Joshua D., by and through its attorneys, Schwartz Sladkus Reich Greenberg Atlas LLP, by way of Complaint against United Healthcare Insurance Company ("Defendant"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a New Jersey medical practice registered to do business in the State of New Jersey.

2. Upon information and belief, Defendant is engaged in administering health care plans or policies in the state of New Jersey.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The insurance policies at issue are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The administrative remedies have been exhausted.

## FACTUAL BACKGROUND

4. Plaintiff is a medical practice comprised of physicians who specialize in pediatric neurological and neurosurgical diseases.

5. On May 6, 2019, two of Plaintiff's physicians performed an emergency surgical procedure, known as a craniectomy, on six-month old Peter A. ("Patient 1") to treat a condition known as trigonocephaly. (*See*, **Exhibit A**, attached hereto.)

6. At the time of his treatment, Patient 1 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

7. Plaintiff does not have a network contract with Defendant that would determine or limit payment for Plaintiff's treatment of Defendant's members.

8. Patient 1 assigned his health insurance rights and benefits to Plaintiff. (*See*, **Exhibit B**, attached hereto.)

9. After treating Patient 1, Plaintiff submitted two Health Insurance Claim Form ("HCFA") medical bills to Defendant, one reflecting the services performed by the primary surgeon, and one reflecting the services performed by the assistant surgeon. (*See*, **Exhibit C**, attached hereto.)

10. The HCFA submitted on behalf of Plaintiff's primary surgeon, in connection with Patient 2's treatment, sought payment in the total amount of $43,441.00. *Id*.

11. The HCFA submitted on behalf of Plaintiff's assistant surgeon also included charges in the amount of $43,441.00; however, Plaintiff anticipated an 80% reduction in payment off of those charges, as is the industry standard for assistant surgeon reimbursement.

12. In response to Plaintiff's primary surgeon HCFA, Defendant issued payment in the amount of $31,801.75, and "adjusted" $19,738.75 of Plaintiff's charges as exceeding competitive fees for similar services in Plaintiff's area. (*See*, **Exhibit D**, attached hereto.)

13. However, Plaintiff's primary surgeon charges, in connection with Patient 1's treatment, were usual and customary, as confirmed by objective usual and customary data, for the area where the services were performed.

14. In response to Plaintiff's assistant surgeon HCFA, Defendant issued payment in the amount of $475.75, rather than $8,688.20, or 20% of Plaintiff's usual and customary charges, per the industry standard for assistant surgeons. *Id*.

15. Defendant's reimbursement for Plaintiff's assistant surgeon charges was most unusual because it was not even 20% of ***Defendant's*** primary surgeon reimbursement, but rather was approximately 1.5% of ***Defendant's*** primary surgeon reimbursement. *Id*.

16. Thus, while Plaintiff contends that Defendant's primary surgeon reimbursement was improperly reduced based on usual and customary considerations, Defendant's assistant surgeon reimbursement was simply egregious, with no rhyme or reason to Defendant's calculation.

17. Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's reimbursement determination as an underpayment under the terms of Patient 1's insurance plan.

18. However, Defendant failed to issue any additional payment in response to Plaintiff's internal appeals.

19. On March 30, 2017, two of Plaintiff's practitioners performed emergency spinal cord surgery on Ava A. ("Patient 2"). (*See*, **Exhibit E**, attached hereto.)

20. At the time of her treatment, Patient 2 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

21. Patient 2 assigned her health insurance rights and benefits to Plaintiff. (*See*, **Exhibit F**, attached hereto.)

22. After treating Patient 2, Plaintiff submitted two HCFA medical bills to Defendant, one reflecting the services performed by the primary surgeon, and one reflecting the services performed by the assistant surgeon. (*See*, **Exhibit G**, attached hereto.)

23. The HCFA submitted on behalf of Plaintiff's primary surgeon, in connection with Patient 2's treatment, sought payment in the total amount of $58,314.00. *Id*.

24. The HCFA submitted on behalf of Plaintiff's assistant surgeon also contained charges in the amount of $58,314.00; however, Plaintiff anticipated an 80% reduction in payment off of those charges, as is the industry standard for assistant surgeon reimbursement.

25. In response to Plaintiff's primary surgeon HCFA, Defendant issued payment in the amount of $12,280.00, and "adjusted" $51,586.20 of Plaintiff's charges as exceeding competitive fees for similar services in Plaintiff's area. (*See*, **Exhibit H**, attached hereto.)

26. However, Plaintiff's primary surgeon charges in connection with Patient 2's treatment were usual and customary, as confirmed by objective usual and customary data, for the area where the services were performed.

27. In response to Plaintiff's assistant surgeon HCFA, Defendant issued payment in the amount of $4,325.12, rather than $10,317.24, or 20% of Plaintiff's usual and customary charges, per the industry standard for assistant surgeons. *Id*.

28. Plaintiff submitted multiple internal appeals challenging Defendant's reimbursement determination as inconsistent with the terms of Patient 2's insurance plan.

29. However, Defendant failed to issue any additional payment in response to Plaintiff's appeals.

30. On or around August 29, 2019, Adele B. ("Patient 3"), a seven-year-old female, presented emergently to Morristown Memorial Hospital in connection with an injury that occurred on August 9, 2019. (*See*, **Exhibit I**, attached hereto.)

31. Specifically, Patient 3 fell off a hotel bed on August 9, 2019, and she presented on August 29, 2019 with her head in the "cock-robin" position. *Id.*

32. Plaintiff performed evaluative and surgical treatment on Patient 3 on August 30, 2019, August 31, 2019, September 3, 2019, and September 6, 2019. *Id.*

33. At the time of her treatment, Plaintiff was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

34. Patient 3 assigned her applicable health insurance rights and benefits to Defendant. (*See*, **Exhibit J**, attached hereto.)

35. Plaintiff submitted HCFA medical bills to Defendant for the medical treatment performed on Patient 3 seeking payment in the amount of $65,373.00. (*See*, **Exhibit K**, attached hereto.)

36. In response to Plaintiff's HCFAs, Defendant "allowed" payment in the amount of $22,941.57 and adjusted the remaining $42,431.43 of Plaintiff's charges. (*See*, **Exhibit L**, attached hereto.)

37. Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's payment determination as inconsistent with the usual, customary, and reasonable ("UCR") provisions of Patient 3's insurance plan.

38. However, Defendant failed to issue any additional payment in response to Plaintiff's internal appeals.

39. On or around May 25, 2016, Joshua D. ("Patient 4"), a 15-year-old male, presented emergently to Morristown Medical Center after fracturing his skull in a bicycle accident. (*See*, **Exhibit M**, attached hereto.)

40. On May 26, 2016, Plaintiff performed an emergency craniectomy, among other procedures, to treat Patient 4's injuries. *Id.*

41. At the time of his treatment, Plaintiff was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

42. Patient 4 assigned her applicable health insurance rights and benefits to Defendant. (*See*, **Exhibit N**, attached hereto.)

43. Plaintiff submitted a HCFA medical bill to Defendant for the medical treatment performed on Patient 4 seeking payment in the amount of $120,850.00. (*See*, **Exhibit O**, attached hereto.)

44. In response to Plaintiff's HCFA, Defendant issued payment in the amount of $35,940.00 and attributed $23,725.42 towards Patient 4's responsibility. (*See*, **Exhibit P**, attached hereto.)

45. It is unclear to Plaintiff how Defendant processed the remaining $61,184.58 of Plaintiff's charges.

46. Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's payment determination as inconsistent with the usual, customary, and reasonable ("UCR") provisions of Patient 4's insurance plan.

47. However, Defendant failed to issue any additional payment in response to Plaintiff's internal appeals.

48. Defendant has failed to process the claims for Patient 1, Patient 2, Patient 3 and Patient 4 in accordance with their respective insurance plans.

49. When combining the three claims at issue, Defendant has underpaid Plaintiff by a total of $199,219.25.

50. Accordingly, Plaintiff brings this action for recovery of the outstanding balance, and Defendant's breach of fiduciary duty.

## **COUNT ONE**

### **FAILURE TO MAKE PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)**

51. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 50 of the Complaint as though fully set forth herein.

52. Plaintiff avers this Count to the extent ERISA governs this dispute.

53. Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a benefits plan.

54. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient 1, Patient 2, Patient 3 and Patient 4.

55. Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

56. Plaintiff is entitled to recover benefits due to Patients 1, 2, 3 and Patient 4 under any applicable ERISA plan or policy.

57. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

## COUNT TWO

## BREACH OF FIDUCIARY DUTY AND CO-FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a)

58. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 57 of the Complaint as though fully set forth herein.

59. 29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

60. Plaintiff seeks redress for Defendant's breach of fiduciary duty and/or Defendant's breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a).

61. 29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

62. Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1).

63. 29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

64. Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

65. Here, when Defendant acted to deny or partially deny payment for the medical bill at issue, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

66. Here, Defendant breached its fiduciary duties by: (1) failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations; (2) participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (3) failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and (4) wrongfully withholding money belonging to Plaintiff.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A.  For an Order directing Defendant to pay Plaintiff $199,219.25;
B.  For an Order directing Defendant to pay Plaintiff all benefits Patient 1, Patient 2, Patient 3 and Patient 4 would be entitled to under the applicable insurance plan or policy administered by Defendant;
C.  For compensatory damages and interest;
D.  For attorney's fees and costs of suit; and
E.  For such other and further relief as the Court may deem just and equitable.

Dated: New York, NY
September 3, 2021

        SCHWARTZ SLADKUS
        REICH GREENBERG ATLAS LLP
        *Attorneys for Plaintiff*

By: /s/ Michael Gottlieb
     Michael Gottlieb
     444 Madison Avenue
     New York, NY 10022
     (212) 743-7054